STATE of Wisconsin, Plaintiff-Respondent,

v.

Jeris M. MOORE, Defendant-Appellant.

Court of Appeals

*No. 2005AP1204–CR. Submitted on briefs May 1, 2006.
—Decided July 5, 2006.*

2006 WI App 162

(Also reported in 721 N.W.2d 725.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Richard D. Martin*, assistant state public defender, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general and *Mark A. Neuser*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. WEDEMEYER, P.J.   Jeris M. Moore appeals from a judgment entered after he pled guilty to one count of second-degree sexual assault of a child. He also

appeals from an order denying his postconviction motion. He claims that the trial court erroneously exercised its discretion when it denied his postconviction motion without reviewing confidential, sealed juvenile records. Because we conclude that the trial court should have reviewed *in camera* the sealed records in order to determine whether their contents rendered the information presented at sentencing inaccurate, we reverse the order and remand for further proceedings consistent with this opinion.[1]

## BACKGROUND

¶ 2. On September 27, 2003, the victim, then thirteen-year-old Keiera B., was sleeping over at a friend's home. Moore, then seventeen years old, was Keiera's girlfriend's older brother.

¶ 3. Keiera reported to police that she awoke sometime in the middle of the night to find her clothes had been lowered and Moore was lying on her with his penis in her vagina. Moore admitted that he had pulled down Keiera's pants and engaged in penis-to-vagina sexual intercourse. He claimed that Keiera participated willingly and that he got caught up "in the moment." He indicated that he knew this was wrong and, because he was older, he should not have committed the sexual act.

¶ 4. As a result of the incident, in October 2003, Moore was charged with one count of second-degree sexual assault of a child. He entered into a plea agreement with the State, wherein he agreed to plead guilty in exchange for the State's promise not to make a specific sentencing recommendation. A presentence investigation (PSI) report was ordered.

---

[1] Based on our disposition, it is not necessary for us to reverse the judgment. Depending upon what happens with the *in camera* review, the trial court may need to amend the judgment.

¶ 5. The sentencing proceeding occurred on April 5, 2004. Defense counsel asked for an imposed and stayed prison sentence with a period of probation and conditional jail time. The PSI writer recommended six-to-eight years of initial confinement followed by five-to-six years of extended supervision. There was discussion at the sentencing hearing about Moore's two prior juvenile contacts, which resulted in arrests for second-degree sexual assault. The first was a 1999 incident where Moore allegedly groped a thirteen-year-old's breast, and the second was a 2001 incident where Moore allegedly attempted to force a fifteen-year-old girl to have sexual intercourse, which was interrupted by the girl's mother who forced her way into the room. Although Moore was arrested, the cases were never prosecuted.

¶ 6. In response to defense counsel's concern about the PSI writer's presentation regarding the two prior contacts, the trial court indicated it would make a "strong distinction" between the two prior incidents because they were contacts and not convictions. Later in the sentencing hearing, however, the trial court referred to the prior contacts as "red flags" that Moore failed to heed, and stated that "an individual who continues to get himself involved in this type of sexual contact and then denies it is an individual of poor character."

¶ 7. Ultimately, the trial court imposed a sentence of fifteen years, consisting of seven years of initial confinement and eight years of extended supervision. Judgment was entered. Moore filed a postconviction motion seeking sentence modification and requested permission to support his postconviction motion with his confidential juvenile documents submitted under seal. He alleged that the juvenile court records provided a "more exculpatory picture" of the two prior contacts than what was reported in the PSI and that, as a result, the

trial court relied on inaccurate information when it imposed sentence. The trial court denied the motion without reviewing the sealed records and without holding a hearing, concluding that sentence modification was not warranted. Moore now appeals.

## DISCUSSION

■

¶ 8.   The issue in this case is whether the trial court erred when it denied Moore's motion without an *in camera* review of the confidential juvenile records. We conclude that the trial court should have conducted an *in camera* review to determine whether the contents of those records rendered the resulting sentence one that was based on inaccurate information. Because the trial court declined to review the confidential records, we reverse the postconviction order and remand the matter to the trial court with directions to conduct an *in camera* review. After the review has occurred, the trial court shall determine whether the records rendered the information relied on at sentencing inaccurate. If the trial court determines the confidential records did not render the sentencing information inaccurate, then the order denying Moore's postconviction motion shall be reinstated. If the trial court determines that the confidential records did result in reliance on inaccurate information at sentencing, then Moore's postconviction motion should be granted and resentencing should be ordered.[2]

¶ 9.   Moore alleges here that the PSI writer did not provide a neutral or accurate account of his two

---

[2] The trial court shall be guided by the new standard on this issue set forth in *State v. Tiepelman*, 2006 WI 66, ¶ 2, 291 Wis. 2d 179, 717 N.W.2d 1.

prior juvenile contacts. He contends that the thirty pages of juvenile court records paint a different, more exculpatory picture than that presented by the PSI writer and the prosecutor. Specifically, he contends that the district attorney's office declined to prosecute the two prior contacts because of inconsistencies in the victims' statements and because proving that a crime occurred would be problematic. He points to a statement from a witness to the 2001 incident who overheard Moore and the victim talking and laughing, but did not hear the victim call for help. Moore argues that he was falsely accused of the prior sexual assault incidents. He argues that his sentencing in this case was based in part on the trial court's erroneous understanding of his juvenile record.

¶ 10.   "A defendant has a due process right to be sentenced based on accurate information." *State v. Groth*, 2002 WI App 299, ¶ 21, 258 Wis. 2d 889, 655 N.W.2d 163 (citation omitted). This is an issue that we review independently. *Id.* In order to establish a violation of due process sufficient to justify resentencing, a defendant must show that the challenged information was inaccurate and that the court relied on it. *Id.*, ¶¶ 21–22.

¶ 11.   Here, it appears from the record that the trial court relied in part on the prior juvenile contacts when it imposed sentence:

> At the same time, Mr. Moore, there are some very negative aspects of your character. These previous contacts with regard to sexual assault are very troubling. Again, all you have to do, Mr. Moore, is put yourself in a position of coming to a sentencing in which you want to address the Court after one of your sisters or your mother or your grandmother have been

sexually assaulted, and hearing that that person, although not previously criminally convicted, had had contacts with the criminal justice system for breast fondling in ... January of 1999, for this incident at S.W.'s home, which is detailed in the top of page 4 of the PSI, which is corroborated by others, the victim's mother having to push her way into the room, the girl at that point having to pull up her pants. There are suspicions by one of your teachers or your cou[n]selors contained here within the PSI about you being hypersexualized.

[T]hose two incidents, Mr. Moore, were red flags. They were red flags where you should have understood that you cannot act in that manner, that sexuality is not to be treated in that way, and you didn't heed those red flags. They were contacts. They were not convictions. I do not consider them as such, but it is an argument of strong logical persuasion that an individual who continues to get himself involved in this type of sexual contact and then denies it is an individual of poor character.

. . . .

I believe the risk to the community for Mr. Moore is at least high intermediate. It's because of the escalation in the sexual contact.

and there are indications that law enforcement has been involved in a situation similar to that earlier, as well as sexual contact touching earlier on.

¶ 12. In particular, the trial court considered the prior contacts as a negative aspect of Moore's character. The trial court, understandably, accepted the information from the PSI report as accurate. Moore's claim now is that the thirty pages of confidential, sealed juvenile court records will alter that assessment.

¶ 13. Because the trial court refused to allow Moore to submit the confidential records from the juvenile proceedings, an assessment of whether or not the challenged information was inaccurate could not be conducted. The trial court cannot rule that the information is accurate without looking at the court records themselves. The court records provide the most reliable information as to the events and circumstances surrounding the 1999 and 2001 sexual assault contacts. Accordingly, we conclude that the trial court should conduct an *in camera* review of the confidential juvenile records to determine whether the records contain any information which renders the trial court's reliance on the prior sexual assault incidents inaccurate.

¶ 14. If the trial court determines from its *in camera* review that it did not rely on any inaccurate information, then it shall reinstate the order denying Moore's postconviction motion. If, however, the trial court determines that the submissions do demonstrate that the sentencing was based on inaccurate information, then the trial court should grant Moore's motion and order a new sentencing hearing.

*By the Court.*—Judgment affirmed; order reversed and cause remanded with directions.